IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| BARRY ARMISTEAD, ) | |
| ) | |
| Plaintiff, ) | |
| Vs. ) | Docket/Complaint No._____ |
| ) | JURY TRIAL DEMANDED |
| STEPHEN DOTSON, Warden, | |
| TAMMY COLLINS-FORD, Associate Warden, ) | |
| TENEKA WASHINGTON, Unit Manager, | |
| CARLAS HARRIS, Case Manager, ) | |
| CORRECTION CORPORATION | |
| of AMERICA, INC., et. al., ) | |
| ) | |
| Respondent(s), ) | |

RECEIVED 08 OCT 23 PM 1:07
THOMAS M. GOULD
CLERK, US DISTRICT COURT
W/D OF TN, JACKSON

**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
UNDER 42 U.S.C. §1983**

I.  **PREVIOUS LAWSUITS**

A.  Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to your imprisonment? Yes (   ) No ( **X** )

B.  If your answer to A is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuit on another piece of paper, using the same outline.)

   Plaintiff(s)   _____N/A_____

_____

1

Defendant(s) _____
_____
_____
_____
_____
_____

2. Court [if federal court, name the district; if state court, name the county]

_____ N/A _____

3. Docket number: _____ N/A _____

4. Name of judge to whom case was assigned: _____ N/A _____

5. Disposition [for example: was the case dismissed? Was it appealed? Is it still pending?]

_____ N/A _____

6. Approximate date of filing lawsuit: _____ N/A _____

7. Approximate date of disposition: __ N/A _____

II. PLACE OF PRESENT CONFINEMENT:

    Whiteville Correctional Facility
    1440 Union Springs Road
    PO Box 679
    Whiteville, TN 38075

A. Is there a prisoner grievance procedure in this institution? Yes ( X ) No ( )

B. Did you present the facts relating to your Complaint in the state prisoner grievance procedure? Yes ( X ) No ( )

C. If your answer is yes,

    1. What steps did you take? ___Upon discovering that the writ of certiorari was being denied due to my not having access to notary and copy service because

2

there is no policy or procedure in place to provide inmates with these notary and copy services for legal filings during institutional lock-downs that are scheduled by the warden of the facility, but not known to inmates. The time limitations do not toll during an institutional lock-down.

    2.    What was the result? I was provided with a notarized letter from the warden stating that the facility was on lock-down during the time that I had a court deadline and no notary or copy service is available during these scheduled lock-downs. No written policy or procedure for notary or copy service during lock-downs was implemented.

D.    If your answer is "no" explain why not: _____ N/A _____

E.    If there is no prisoner grievance procedure in the institution, did you complain to prison authorities?    Yes ( X )    No ( )

F.    If your answer is yes,

    1.    What steps did you take? I also made numerous inquiries to have a letter provided to me long before the court ruled on the writ of certiorari with no compliance being had by the respondents.

    2.    What was the result? Nothing was done until I filed the grievance, then it was addressed almost immediately.

3. <u>Plaintiff also made a Letter Complaint to Associate Warden Tammy Collins-Ford on September 3, 2008 outlining the events leading up to the denial of access to notary and copy services for legal filings during institutional lock-downs. As well as outlining the numerous requests made for a letter to provide to the court stating we were on a lock-down during the deadline for my legal filing. In addition, plaintiff requested resolution as to the costs plaintiff was now incurring due to the actions or inactions of the respondents and requested for a meeting to be had in order to make an amicable resolution. The plaintiff received no reply to this letter complaint.</u>

## III.  PARTIES:

[In item A below, place your name in the first blank and place your present address in the second blank. Do the same for additional Plaintiffs, if any.]

A.  Name of Plaintiff(s): Barry Armistead  #118532

Address:  CCA-WCF, P.O. Box 679, Whiteville, TN 38075-0679

[In item B below, place the full name of the defendant in the first blank, his/her official position in the second blank, and his/her place of employment in the third blank. Use item C for the names, positions and places of employment of any additional Defendants.]

B.  Name of Defendant: Stephen Dotson , is employed as Warden at CCA-WCF

Name(s) of additional Defendant:

<u>Tammy Collins-Ford, Associate Warden CCA-WCF</u>

<u>Teneka Washington – Unit Manager – CCA-WCF</u>

<u>Carlas Harris – Case Manager – CCA-WCF</u>

### IV.   STATEMENT OF CLAIM:

[State here as briefly as possible the **facts** of your case. Describe how each Defendant is involved. Include also the names of other persons involved, dates and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach additional sheets if needed.]

On or about October 19, 2007, the plaintiff received an institutional pass to go to the CCA-WCF library for October 22, 2007 at 7:10 a.m. in order to have his Writ of Certiorari notarized, copied and turned over to the mailroom due to October 22, 2007 being the 60th and final day for completing the writ and having it notarized, copied and turned in to the mailroom. The plaintiff made the necessary arrangements to fully comply with the 60-day time limit in which to file a Writ of Certiorari.

However, upon the plaintiff awakening on the morning of October 22, 2007, he was informed that the facility was on an institutional lock-down. The plaintiff immediately informed the pod officer that he needed to get legal papers notarized due to time limitations, and that he had a library pass to do so. Plaintiff was informed that we were on lock-down and that could not be done. The plaintiff filled out an Inmate Request Form (14-100A) to Ms. E. Sharpe (CCA-WCF Notary) requesting he get his legal papers notarized this date due to a court deadline. In addition, the plaintiff completed 2 separate Inmate Request Forms (14-100A), one to Unit

Manager T. Washington and the other to his Case Manager, C. Harris informing them of the need to have his legal papers notarized due to a court-filing deadline. The pod officer took these forms and stated they'd be given to the unit team. The plaintiff completed a 4th Inmate Request Form (14-100A) stating the same and requesting that it be given to the unit team sergeant or a captain.

Not one of the Inmate Request Forms (14-100A) were ever responded to, nor did the plaintiff get his legal papers notarized, copied or mailed during the institutional lock-down (October 22-25, 2007). However, on the night of the 25th day of October 2007, the plaintiff received a library pass for 7:10 a.m. on October 26, 2007. Upon the plaintiff arriving at the library at 7:10 a.m., he was advised that no notary (Ms. Sharpe) was available as she was off for the week. The plaintiff located a second notary in J-Unit (Mr. Lares) who notarized his Writ of Certiorari and Verification Affidavit.

Upon returning to the library, the plaintiff turned his writ & verification affidavit (137 pages) over to have copies made. Upon receiving the writ back from the copy room, the plaintiff did not know at the time that the verification affidavit had head been left in the copy room and not returned to him. It was not until January 30, 2008 that the original notarized verification affidavit had been located and returned to the plaintiff.

On June 16, 2008, Chancellor Carol McCoy of the Chancery Court, Part II, for Davidson County, Tennessee issued an Order denying and dismissing the plaintiff's Writ of Ceritorari citing it was time-barred due to it not being signed, notarized and mailed on October 22, 2007. (Armistead v. TDOC, Case No. 07-2469-II).

Upon receipt of the Order, the plaintiff filed an "Emergency Grievance" (6-19-08), stating that he had been denied notary and copy service during a scheduled lock-down, unknown

to inmates, and as a result of this, his writ had been denied and dismissed. Grievance Sergeant F. Johnson deemed the grievance non-emergency and returned to me. However, on June 19, 2008, the plaintiff saw the respondent, Warden Dotson in the hallway of the facility whereas he was advised of the problem and requested a letter from him regarding the lock-down. Respondent Dotson telephoned Respondent U/M Washington and requested that she prepare a letter for his signature to give to plaintiff for the court. As of June 24, 2008, a letter was still not provided to the plaintiff and a Second Grievance was prepared and filed. On June 25, 2008, the respondent, Warden Dotson signed and had notarized a letter stating that the facility was on institutional lock-down on October 22-25, 2007 and no notary or copy services was available to the plaintiff. The plaintiff attached this letter to his Motion to the court to re-consider its June 16, 2008 Order.

On or about July 2, 2008, the plaintiff was called to respondent, A.W. Tammy Collins-Ford's office whereas he was provided a response to the grievance of June 24, 2008, which in essence stated that the plaintiff had received a notarized letter from the warden, Stephen Dotson.

On August 15, 2008, the Chancery Court of Davidson County (Case No. 07-2469-II) issued an Order in response to the plaintiff's Motion for Relief from Final Order of Dismissal. The court denied the plaintiff's motion and wrote:

> "…the petitioner [Armistead] states in his motion that it is not his fault that he did not file his petition within the sixty (60) day statutory filing period, due to a lock-down at his facility commencing on the final date of the filing period, October 22, 2007, and lasting through October 25, 2007. He has submitted a notarized memorandum signed by Warden Stephen Dotson in support of this contention. Even though the petitioner's explanation is of no fault of his own – the court is without authority to grant the petitioner's motion on this basis, as it no longer had jurisdiction once the filing date had passed." Therefore, the

fault lies on the institution as no notary and copy service was available during scheduled lock-down situations thus interfering with access to the court which prevented the petitioner from meeting the statutorily mandated filing dates.

The plaintiff attempted to resolve this matter by completing a letter complaint to respondent, A.W. Tammy Collins-Ford on September 3, 2008 and filing a Loss Claim Form (14-6A) on September 15, 2008 for his court costs; however, no replies were ever had nor any action taken.

Therefore, the plaintiff would state that as a direct result of the negligent actions of the respondents, by not providing notary or copy services during institutional lock-downs, unknown to inmates, that he was effectively denied access to the courts as he was under statutorily mandated filing dates which he notified everyone responsible for insuring compliance with access. The court does not toll statutes simply because an institution is on lock-down and the facility has the absolute responsibility to insure that inmates in its charge has access to the courts during these periods as they do any other time, this to insure the timely filing of legal documents. The respondents make the necessary arrangements to insure segregated and protective custody inmates have access to these services on a daily basis and the same should hold true for all inmates during lock-downs. The respondents have a reasonable expectation that inmates have statutorily mandated filing dates and have the responsibility to insure these are met.

The negligent actions of the respondents have caused the plaintiff's writ of certiorari to be dismissed due to no fault of his own as he made the necessary arrangements to have his writ notarized, copied and mailed within the statutorily mandated filing date. The respondents have caused the plaintiff to suffer irreparable harm and as a result of these negligent actions have

caused the plaintiff's release date to be extended by at least 48 days, as well as having the court rule on the merits of his writ and not on the issue of it being time-barred due to the actions or inactions of the respondents. The plaintiff has now incurred court costs for the writ, appellant costs and additional 42 U.S.C. §1983 costs against the TDOC for the actions that lead to the writ of certiorari in the first place which the plaintiff had undeniable proof which would have gained him a favorable ruling from the court if the merits of the case would have been ruled upon.

Further, on July 19, 2008, an unscheduled institutional lock-down occurred at the CCA-WCF facility due to an incident of violence and on July 21, 2008 another inmate in the plaintiff's pod had a court deadline to file his writ of certiorari. This inmate was taken out and escorted by respondent, C. Harris to the library whereas he was provided notary and copy service in order to timely file his writ to the institutional library and then to the mailroom. One could easily imply and show that this was a form of discrimination directly against the plaintiff.

Therefore, the plaintiff requests this court to accept this valid complaint in violation of the plaintiff's constitutional right to access to the courts whereas the respondents directly caused the plaintiff's writ of certiorari to be dismissed and denied due to no actions of his own. The plaintiff further requests this Honorable Court find in favor of the plaintiff and grant the reasonable relief requested.

Plaintiff reserves his right to amend his complaint.

## V.   RELIEF

[State briefly **EXACTLY** what you want the Court to do for you.] Make no legal arguments. Cite no statutes.]

1. Plaintiff would request that an immediate injunction be had requiring CCA-Whiteville Correctional Facility and the Respondent(s) Stephen Dotson, et. al. implement policies and procedures that provide notary and copy service during scheduled or unscheduled institutional lock-downs to the inmates in their charge;

2. Award Plaintiff all costs related to his filing the Writ of Ceritorari, to include court costs, which he has now been ordered to pay, cost of all postage related to the filing of the writ of certiorari, reimbursement for Appellate Costs now incurred as well as the costs associated with the filing of a 42 U.S.C. §2983 Complaint against the TDOC with regards to the writ of certiorari which have now been assessed against the plaintiff as well as all other costs incurred by the plaintiff in this matter due to the Respondent(s) denial of access to the court and due process.

3. Award Punitive Damages in the amount of one hundred thousand dollars ($100,000.00) due to the willful negligence and denial of access to the courts as well as a deterrent to avoid these types of denials in the future.

4. Award reasonable attorney fees for the plaintiff to retain counsel to perfect his appeal in the matter of the appeal in the dismissal of the writ of certiorari due to no fault of the plaintiff's and as a direct result of the Respondent(s) negligent actions or inactions.

5. Any other relief appropriate in this matter for the constitutional violations of the respondent(s) against the plaintiff.

Signed on this 20th day of October, 2008.

*Barry Armistead*
Barry Armistead, Plaintiff – pro-se

118532 CCA-WCF
P.O. Box 679
Whiteville, TN 38075-0679

I declare under penalty of perjury that the foregoing is true and exact, to the best of my knowledge, information and belief.

October 20, 2008
Date

*Barry Armistead*
Plaintiff

11

## DETERMINATION OF NON-INDIGENCY

It appearing based upon the Affidavit of Indigency filed in this Cause and after inquiry made that the Plaintiff is not an indigent person because: _____

_____

_____

_____
HONORABLE JUDGE

---

**NOTICE:** If the judge determines that based upon your affidavit you are not eligible to proceed under a pauper" oath, you have the right to a hearing before the judge or, in those cases that can be appealed to Circuit Court, a hearing before the Circuit Court Judge.

12